IN THE UNITED STATES DISTRICT CIRCUIT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN JESSO; | ) | |
| MICHAEL JESSO; | ) | |
| CAFÉ BORGIA, INC.; and | ) | |
| CAFÉ BORGIA REAL ESTATE, LLC., | ) | Hon.  Gettleman |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 08 CV 3047 |
| | ) | |
| DANIEL R. PODGORSKI, Liquor | ) | |
| Commissioner, in his Official Capacity; | ) | Jury Demand |
| VILLAGE OF LANSING BOARD OF | ) | |
| TRUSTEES, in its Official Capacity; and | ) | |
| VILLAGE OF LANSING, a Municipal | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

NOW COME the Plaintiffs, KAREN JESSO, MICHAEL JESSO, CAFÉ BORGIA, INC., and

CAFÉ BORGIA REAL ESTATE, LLC. (collectively, "Plaintiffs"), by and through their attorneys,

KULWIN, MASCIOPINTO & KULWIN, LLP., and seek against the Defendants (collectively

referred to herein as, "Defendant Village of Lansing") a temporary restraining order (if notice cannot

be timely effectuated) or a preliminary injunction (if notice can be timely provided).  In support of

their motion, Plaintiffs verify as follows.

## I. OVERVIEW OF  INJUNCTIVE RELIEF REQUESTED

This dispute arises from the Village of Lansing's refusal to take any action on – indeed

absolutely ignore – Plaintiffs' application to renew its long-held local liquor license.  Plaintiffs have

a substantive right to have their local liquor license renewed, and absent renewal, a procedural due

process right to a notice and hearing on their application.  Until Plaintiffs' procedural and substantive

rights to their local liquor license can be fully addressed, Plaintiffs request this Court to enter a temporary restraining order or preliminary injunction to maintain the status quo between the parties. Specifically, Plaintiffs seek to enjoin Defendants from: (i) reissuing the local liquor license, previously issued to Plaintiffs, to some other entity or person, and/or (ii) cancelling the local liquor license previously issued to Plaintiffs and/or reducing the number of total available local liquor licenses, pursuant to Lansing Code § 5-54(b) or any other Village ordinance.

## II.  FACTS– DEFENDANTS' WRONGFUL REFUSAL TO RENEW PLAINTIFFS' LIQUOR LICENSE

A.    Plaintiffs' History in Obtaining a Village of Lansing Liquor License

In approximately 1978, Plaintiffs purchased the building located at 17923 Torrence Ave., Lansing, Illinois (the "Lansing Building"), and later, in the early 1980's, purchased an adjoining parcel of land to use for parking.  Ex. 1 ¶11.  In or about the middle 1980's, Plaintiffs began operating an Italian restaurant out of the Lansing Building called Café Borgia.  Ex. 1 ¶12.  For approximately ten years, Plaintiffs repeatedly sought a local liquor license from the Village of Lansing, only to be told that no new applications were being issued and no new licenses were to be had by anyone. Ex. 1 ¶13.

In or about January 1994, the Village of Lansing announced that it was issuing a new local liquor license in order to facilitate the sale of a building between two private individuals so that a previously closed restaurant, called Pipes and Pizza, could be purchased by new ownership and reopened with the ability to sell alcohol.  Ex. 1 ¶14; Ex. 2.  As a result of this announcement and some public debate about its propriety (given the fact that a number of long-standing businesses had waited many years for a local liquor license and were still waiting), in or about early1994, Plaintiffs finally received an application for a local liquor license, which, in turn, however, the Village of Lansing subsequently denied.  Ex. 1 ¶15; Ex. 2.

In response, in or about April 1994, Plaintiffs initiated litigation against the Village of Lansing

for its denial of their 1994 application for a local liquor license. Ex. 1 ¶16. In or about the summer of 1995, the Village of Lansing and Plaintiffs settled their dispute by an agreement through which the Village of Lansing, by its attorney, specifically approved and authorized Plaintiffs' purchase of a local liquor license from Moeller's Lanes, Inc., which was then out of business. Ex. 1 ¶17; Ex. 3; Ex. 4.

B.    Defendants' Routine Renewal of Plaintiffs' Local Liquor License Until Recently

Thereafter, from approximately 1995 through December 2005, Plaintiffs submitted yearly applications to renew their local liquor license, which were routinely approved. Ex. 1 ¶18. In or about 2005, Plaintiffs expended substantial sums of money, totaling in the hundreds of thousands of dollars, to remodel the Lansing Building, including but not limited to installing new awnings and an entirely new exterior. Ex. 1 ¶20. In or about late 2005 or early 2006, Defendants authorized an expansion of Plaintiffs' local liquor license to include hard alcohol, as well as beer and wine. Ex. 1 ¶21.

In or about late 2006, Plaintiffs decided to open another restaurant location, this one in Indiana. Ex. 1 ¶22. In or about late 2006, Plaintiffs listed the Lansing Building for sale, although at the time, they had not decided to close Café Borgia in Lansing and considered having two locations. Ex. 1 ¶23.

In or about December 2006, Plaintiff Karen Jesso called Defendant Podgorski, the Mayor of the Village of Lansing and its Local Liquor Commissioner, inquiring why Defendants had not yet sent Plaintiffs their local liquor license renewal application. Ex. 1 ¶24. During this conversation, Defendant Podgorski stated that Plaintiffs would not be receiving a renewal application or local liquor license for 2007 because Plaintiffs had made Defendant Podgorski, as Mayor of Lansing, "look like a fool" in previously persuading him to expand Plaintiffs' liquor license. Ex. 1 ¶25. By the end of December 2006, after complaining to the Village of Lansing's Chamber of Commerce and some additional discussions, Defendants did finally deliver to Plaintiffs a renewal application for their local

liquor license, which was ultimately approved for 2007. Ex. 1 ¶26.

In or about August 2007, Plaintiffs had yet to sell or lease the Lansing Building to another restauranteur, at least in part, because of Defendants' refusal to provide prospective purchasers with any reasonable certainty about their future ability to sell alcohol on the premises. Ex. 1 ¶27. At this time, Plaintiffs opened their second restaurant location in Munster, Indiana. Ex. 1 ¶28. In so doing, Plaintiffs were forced to temporarily shut down the restaurant operations in Lansing, Illinois because of a skilled labor shortage that prevented Plaintiffs – at the time – from operating both of their locations. Ex. 1 ¶29.

C.    Defendants' Violation of Plaintiffs' Due Process Rights

On or about December 27, 2007, Plaintiffs' business attorney went to the offices of Defendant Podgorski to inquire why Plaintiffs had not yet received their local liquor license renewal application like every other local liquor license holder.   Ex. A ¶30; Ex. A-1.  At this time, Plaintiffs' business attorney was informed by representatives of the Defendant Village of Lansing that Defendant Podgorski had left explicit instructions that Plaintiffs were not to receive a renewal application unless Plaintiffs first met with Defendant Podgorski.  Plaintiffs' business attorney was further informed that Defendant Podgorski was out of town until after the first of the new year, at which time Plaintiffs' 2007 local liquor license would expire and any renewal application filed thereafter would be null and void pursuant to Section 5-69 of the Lansing Code. Ex. 1 ¶31; Ex. 1-A.

Later on December 27, 2007, Plaintiffs' business attorney corresponded with the attorney for the Defendant Village of Lansing, explaining Plaintiffs' request for a renewal application for its local liquor license, and the Defendant Podgorski's wrongful denial to issue a renewal application. Ex. ¶32; Ex. 1-B. Plaintiffs' December 27, 2007 letter to the attorney for the Defendant Village of Lansing concluded by stating, "[The] direction not to allow my client to file a timely renewal

application is tantamount to taking their license without due process of law." Ex. 1 ¶33; Ex. 1-B.

Shortly after sending this letter dated December 27, 2007, Plaintiffs, through their business attorney, received a renewal application for their local liquor license. On December 28, 2007, Plaintiffs submitted to Defendants their completed renewal application and included a check in the amount of $1,000, as required.  Ex. 1 ¶34; Ex. 1-C; Ex. 1-D.

On or about January 16, 2008, Plaintiffs' business attorney sent another letter to Defendant Podgorski, explaining that Plaintiffs had yet to receive their 2008 local liquor license.  In his January 16, 2008 correspondence, Plaintiffs' business attorney stated:

> I am requesting that you issue their license for 2008 or indicate in writing why you are not going to issue their license, or why you are going to delay issuing their license.  As far as I know, my client have no violations against them and they fully qualify in every regard to have their liquor license renewed for the year 2008.

Ex. 1 ¶34; Ex. 1-D

As of the filing of Plaintiffs' complaint, Defendants have refused to deliver Plaintiffs' local liquor license for 2008 – and have provided no notice or hearing related to Plaintiffs' application for renewal – which in turn has caused a cessation of any restaurant activities within the Lansing Building. Ex. 1 ¶36.  There is no "cause" – within the meaning of the Lansing Village Code or other law – for Defendants' refusal to renew Plaintiffs' local liquor license.  Ex. 1 ¶37.  In addition, Defendants' non-action on Plaintiffs' renewal application has prevented Plaintiffs from filing a formal appeal with the State Liquor Commissioner, there being no "official record" of a "formal hearing," which is required by Lansing's Municipal Code for any such appeal.

Consequently, Plaintiffs filed their four count complaint, alleging against Defendants a Fourteenth Amendment procedural due process claim, a Fifth Amendment taking of property claim, and two Equal Protection claims.  In addition, Plaintiffs now request injunctive relief through this

motion to maintain the status quo by enjoining Defendants from: (1) reissuing the local liquor license, previously issued to Plaintiffs, to some other entity or person, and/or (2) cancelling the local liquor license previously issued to Plaintiffs and/or reducing the number of total available local liquor licenses, pursuant to Lansing Code § 5-54(b) or any other Village ordinance.

## III. LEGAL ARGUMENT– PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

### A.    Legal Framework

The substantive elements for obtaining a temporary restraining order and preliminary injunction are the same. *The Little Tikes Co. v. Kid Station Toys, Ltd.*, 2008 WL 1805379, *3 (N.D. Ill. 2008). A plaintiff must demonstrate: (1) some likelihood, *i.e.,* only a better than negligible chance, of success on the merits; and (2) an inadequate remedy at law and irreparable harm if preliminary relief is denied. *N & N Catering Co. v. Chicago*, 26 F. Supp. 2d 1067, 1071 (N.D. Ill. 1998). If the plaintiff fails to establish either of these elements, then the analysis ends without injunctive relief being issued. *Id.*

If the plaintiff satisfies the first two elements, then the court considers the irreparable harm to the defendant if preliminary relief is granted as balanced against the irreparable harm to the plaintiff if preliminary relief is denied, as well as the public interests involved in so granting the relief requested. *Id.* The court uses a "sliding scale" approach. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997). That is, the "stronger the case on the merits, the less irreparable harm must be shown." *Id.*

Procedurally, a temporary restraining order differs from a preliminary injunction in that a TRO may be entered only for a limited amount of time (no more than 20 days) but can be entered without any written or oral notice to the opposition. Fed. R. Civ. P. 65(b). Under Rule 65(b), a TRO may be granted without written or oral notice to the adverse party or that adverse party's attorney only if:

(1) it clearly appears from specific facts shown by affidavit or a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies in writing the efforts, if any, which have been made to give the notice and reasons supporting the claim that notice should not be required. Fed. R. Civ. P. 65(b).

B.     Element #1:    Plaintiffs' Likelihood of Success Far Exceeds the Negligible Standard

The threshold inquiry is whether the plaintiff is likely to succeed on the merits. Although the plaintiff must demonstrate "some probability of success on the merits, the threshold is low. It is enough that the plaintiff's chances are better than negligible." *N & N Catering*, 26 F. Supp. 2d at 1071 (quoting *Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986)). Plaintiffs far exceed this standard.

1.     *Plaintiffs Have a Strong Likelihood of Proving a Procedural Due Process Violation*

Plaintiffs are very likely to prevail on their procedural due process claim, Count 1. Ex. 1. A procedural due process claim under the Fourteenth Amendment, brought pursuant to 42 U.S.C. §1983, requires a "two step process." *N & N Catering*, 26 F. Supp. 2d at 1071. First, the plaintiff must be deprived of a "property interest" within the meaning of the Fourteenth Amendment. If so, the court must then determine "what process is due." *Id.*

Plaintiffs clearly have a "property interest" in the renewal of their local liquor license. The Seventh Circuit has repeatedly so held. In *Club Misty*, the Court explicitly held that a licensee's "interest in the renewal" of its local liquor license is a "property right for purposes of the Fourteenth Amendment." *Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir. 2000) (explaining that basis for finding a property right is that local liquor licenses are revocable or non-renewable only for "cause"); *accord Reed v. Village of Shorewood*, 704 F.2d 943, 948-49 (7th Cir. 1983) (licensee has property

right within Fourteenth Amendment in the renewal of local liquor license, which can be denied only for cause). Lansing's Village Code is substantively identical to those provisions cited in *Club Misty* and *Reed*. It too permits the non-renewal of Plaintiffs' local liquor license only for cause. Lansing Code §5-68 ("Any licensee may renew his license to sell alcoholic beverages provided he is then qualified to receive a license and the premises for which such renewal license are suitable for such purpose"). Accordingly, since Defendants have entirely ignored Plaintiffs' renewal application, Plaintiffs are very likely to establish a deprivation of a "property interest" within the meaning of the Fourteenth Amendment.

Secondly, Plaintiff have received no "process" within the meaning of the due process clause and so are likely to prevail on their claim. Defendants have done nothing but ignore Plaintiffs' renewal application for months. Ex. 1 ¶36. In particular, Plaintiffs have received neither notice for Defendants' inaction on their application (and *de facto* denial of it) nor a public hearing. If Defendants intend to deny the renewal application, they owe Plaintiffs both notice and a hearing. *Club Misty, Inc. v. Laski*, 208 F.3d 615, 618-19 (7th Cir. 2000) ("We held in *Reed* . . . that Illinois law treats a refusal to renew a liquor license as equivalent to revocation, entitling the licensee to ***all the protections, procedural and substantive, of the revocation process***," namely notice and a hearing) (citing *Reed*, 704 F.2d at 949) (emphasis added). In order for the Village of Lansing to revoke a liquor license, a formal hearing must be held. Lansing Code §5-33 (providing that all appeals to the Illinois Liquor Control Commission related to the "fining, suspending or revoking" a local liquor license "shall be limited to the review of the official record of the formal proceedings before the commissioner"). As such, if Defendants wanted to deny Plaintiffs' renewal application, they were obligated – under *Club Misty* and *Reed* – to provide Plaintiffs with the same procedural safeguards afforded individuals who have their local liquor license revoked, namely, the "formal proceeding"

referred to in Lansing Code §5-33. Nothing of the sort occurred. Indeed, through their inaction and the lack of any "official record" of any "formal proceeding," Defendants have prevented Plaintiffs from appealing the matter to the State Liquor Control Commission. *Id.* Accordingly, Plaintiffs have a very good likelihood of prevailing on their procedural due process claim, Count 1.

    2.    *Plaintiffs' Will Likely Prevail on Their Equal Protection Claims*

    Plaintiffs are equally likely to prevail on their equal protection claims, Count 3 and Count 4. Ex. 1. A "class of one" equal protection claim under the Fourteenth Amendment, brought pursuant to 42 U.S.C. §1983, also requires a two step process.   The plaintiff must establish: (1) that the defendant is treating him differently from similarly situated individuals, and (2) that there is no rational basis for the disparate treatment but rather that it arises from defendant's illegitimate animus for the plaintiff. *Esmail v. Macrane, Jr.* 53 F.3d 176, 179-80 (7th Cir. 1995) (applicant for local liquor license stated claim for "class of one" equal protection violation by alleging that mayor denied liquor license renewal application due solely to vindictive campaign against him).

    Here, Plaintiffs have a better than negligible chance of establishing disparate treatment on either one or two fronts.   First, the Village of Lansing in the past has approved local liquor license renewal applications to businesses that are not then operating, either because they have gone out of business, are temporarily closed, and/or are being sold. Ex. 1, Count 3; Ex. 3; Ex. 4. Specifically, in 1995, the Village of Lansing allowed Moeller's Lanes, Inc., then out of business, to not only retain its local liquor license but also to obtain consideration from a private entity in return for the sale of that local liquor license. Ex. 1, Count 3; Ex. 3; Ex. 4. In contrast to Moeller's Lanes, Defendants have refused to allow Plaintiffs to retain their local liquor license, while their restaurant/building is only temporarily closed. Ex. 1, Count 3. In the past, the Village of Lansing also has assured prospective purchasers of closed establishments that they would approve a local liquor license in

order to facilitate the sale of that closed restaurant. Ex. 1, Count 4; Ex. 2. In particular, in 1994, the Village of Lansing assured a prospective purchaser of Pipes and Pizza restaurant that it would receive a new liquor license, in order to facilitate the sale of that closed restaurant/building. Ex. 1, Count 4; Ex. 2. In contrast, Defendants have refused to assist Plaintiffs in their efforts to sell or lease their building to a new restauranteur. Ex. 1, Count 4. Based on the foregoing, Plaintiffs have a significant likelihood of establishing disparate treatment by Defendants.

Second, Plaintiffs have a better than negligible chance of establishing the lack of any rational basis for Defendants' disparate treatment. Indeed, Defendant Podgorski, the Village of Lansing's Mayor and Local Liquor Commissioner, specifically admitted his personal animus toward Plaintiff Karen Jesso. In the context of discussing the Village's resistence to renew Plaintiffs' liquor license, Defendant Podgorski admitted that Plaintiff Karen Jesso was experiencing difficulty because she made him "look like a fool." Ex. 1 ¶25. This type of personal animus satisfies the equal protection class of one inquiry. *Esmail*, 53 F.3d at 179-80 (applicant for local liquor license stated claim for "class of one" equal protection violation by alleging that mayor denied liquor license renewal application due solely to vindictive campaign against him). Accordingly, Plaintiffs have established a likelihood of succeeding on the merits on Counts 3 and 4, as well.

C.    Element #2: Plaintiffs Will Have An Inadequate Remedy Without Equitable Relief

Plaintiffs must also make a showing of an inadequate remedy at law and irreparable harm if preliminary relief is denied. *N & N Catering Co.*, 26 F. Supp. 2d at 1071. The two elements of "inadequate remedy at law" and "irreparable harm" are often "merged because they involve the same analysis." *Id.* at 1079.

Courts facing similar circumstances – namely, the taking of a liquor license – have readily found an inadequate remedy at law and irreparable harm to exist, sufficient to allow injunctive relief

to maintain the status quo. *N & N Catering Co.*, 26 F. Supp. 2d at 1071 (plaintiff would have inadequate remedy at law if court failed to enjoin referendum that would take away plaintiff's liquor license since a "buyout by the City does not appear possible" and the value of plaintiff's business and its reputation would be harmed without the liquor license); *Hightime Entertainment, Inc. v. Salustro*, 59 Ill. App. 3d 289, 292, 375 N.E.2d 187, 189 (3d Dist. 1978) (holding that "imminent and irreparable harm will occur if the liquor license is not preserved," and no adequate remedy at law would be available, because the loss of the corporation's liquor license would be the "destruction of one of the corporation's most valuable assets"); *In re Go West Entertainment, Inc.*, 2008 WL 2051116, *3 (Bkrtcy. S.D.N.Y. 2008) ("[H]ere is no dispute on the papers . . . that the revocation of the Debtor's liquor license constitutes irreparable injury to the Debtor. The State has not questioned this"); *Kirpat, Inc. v. Delaware Alcoholic Beverage Control Com'n*, 741 A.2d 356, 358-59 (Del.Supr.1998) ("The Commission also does not dispute Kirpat's contention that it will suffer irreparable harm if a stay is not granted. It is undisputed on this record that, if a stay is not granted, then . . . Kirpat will lose its business. We find the harm to Kirpat if a stay is not granted to be irreparable.").

Like the plaintiffs in *N & N Catering*, *Hightime Entertainment*, *Go West Entertainment*, and *Kirpat, Inc.*, Plaintiffs too will suffer an irreparable harm if the Court fails to enjoin Defendants from giving Plaintiffs' previously issued liquor license to another entity or reducing the amount of local liquor licenses available in the Village. The Village of Lansing limits the total number of local liquor licenses. Lansing Code §5-54 (entitled, "Number of Licenses"). Accordingly, if the Village of Lansing, in response to this suit, were to issue Plaintiffs' previously issued liquor license to another entity, and no additional liquor licenses were available, Plaintiffs would be unable to get another local liquor license for some indefinite, unknown period of time. Indeed, upon moving into Lansing, Plaintiffs had to wait approximately 10 years before being granted their liquor license. Ex. 1 ¶13.

Being deprived of their long-held, local liquor license for some additional, indefinite period of time would result in irreparable harm to Plaintiffs that could not be readily calculated in damages.

Similarly, the Village of Lansing has the ability to reduce the total number of available local liquor licenses. Lansing Code §5-54(b). The same analysis applies to this circumstance. If, in response to this suit, the Village of Lansing were able to reduce the total amount of available local liquor licenses (effectively, cancelling Plaintiffs' local liquor license), Plaintiffs would be unable to get another local liquor license for some unknown, indefinite period of time. As stated above, such a circumstance would result in irreparable harm to Plaintiffs that could not be readily calculated in damages. Accordingly, without the injunctive relief being requested, Plaintiffs would be irreparably harmed.

D.    Element #3: Balancing Irreparable Harm Among the Parties & Public's Interest

There will be no irreparable harm to the Village of Lansing's government by enjoining it from issuing Plaintiffs' liquor license to some other entity or reducing the number of available local liquor licenses by one. If the Village of Lansing has the need to grant another local liquor license to a readily available entity, the Village can easily approve a temporary or permanent expansion of the number of licenses available. The Village of Lansing has done so in the past. Ex. 2 & Ex. 5. Accordingly, the irreparable harm that Plaintiffs' will suffer by denying the injunctive relief far outweighs any harm to be suffered by the Village of Lansing if granted.

Nor is there any harm to the public's interest in enjoining the Village of Lansing from issuing Plaintiffs' liquor license to some other entity or reducing the number of available local liquor licenses by one. The residents of the Village of Lansing will not be harmed in any way by the requested injunctive relief, which merely seeks to maintain the status quo that has existed for some significant period of time.

E.    Plaintiffs' Efforts at Providing Notice to Defendants for Rule 65(b)/TRO Purposes

Plaintiffs' attorney has made reasonable efforts to provide notice to the Defendants and the attorney for the Village of Lansing.  Specifically, Plaintiffs' attorney has sent to the Defendants and the attorney for the Village of Lansing a facsimile of Plaintiffs' complaint and the present motion, including the date of its presentment.  Ex. 6.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs request that this Court enter a temporary restraining order or preliminary injunction to maintain the status quo between the parties by waiving any bond requirements, and:

(i) enjoining Defendants from reissuing the local liquor license, previously issued to Plaintiffs, to some other entity or person; and

(ii) enjoining Defendants from cancelling the local liquor license previously issued to Plaintiffs and/or reducing the number of total available local liquor licenses, pursuant to Lansing Code § 5-54(b) or any other Village ordinance.

Respectfully Submitted,

KULWIN, MASCIOPINTO & KULWIN, LLP.

By:_____
        Anthony J. Masciopinto
        One of the Attorneys for Plaintiffs

Shelly B. Kulwin
Anthony J. Masciopinto
Jeffrey R. Kulwin
KULWIN, MASCIOPINTO & KULWIN, LLP.
161 North Clark Street, Suite 2500
Chicago, Illinois 60601
T:  312.641.0300; F: 312.855.0350
amasciopinto@kmklawllp.com

## CERTIFICATE OF SERVICE

The undersigned verifies that he caused this PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION to be served on those below-referenced individuals via electronic facsimile transmission, this 27th day of May 2008, before the hour of 5:30 p.m., with a promise to provide each with the specific date and time for presentment/hearing once received by the Court.

Village of Lansing
Daniel Podgorski, Mayor & Liquor Comm'n
and President of Board of Trustees
18200 Chicago Ave.
Lansing, IL. 60438
F:  708.895.6878

Village of Lansing
Dale Anderson, Village Attorney
18225 Burnham Ave.
Lansing, IL.  60438
F: 708.895.8815

By:_____
Anthony J. Masciopinto
One of the Attorneys for Plaintiffs

Shelly B. Kulwin
Anthony J. Masciopinto
Jeffrey R. Kulwin
KULWIN, MASCIOPINTO & KULWIN, LLP.
161 North Clark Street, Suite 2500
Chicago, Illinois 60601
T:  312.641.0300; F: 312.855.0350
amasciopinto@kmklawllp.com

| | |
|---|---|
| KAREN JESSO; | ) |
| MICHAEL JESSO; | ) |
| CAFÉ BORGIA, INC.; and | ) |
| CAFÉ BORGIA REAL ESTATE, LLC., | )   Hon. |
| | ) |
| Plaintiffs, | ) |
| v. | )   No. |
| | ) |
| DANIEL R. PODGORSKI, Liquor | ) |
| Commissioner, in his Official Capacity; | )   Jury Demand |
| VILLAGE OF LANSING BOARD OF | ) |
| TRUSTEES, in its Official Capacity; and | ) |
| VILLAGE OF LANSING, a Municipal | ) |
| Corporation, | ) |
| | ) |
| Defendants. | ) |

## **VERIFIED COMPLAINT**

NOW COME Plaintiffs, KAREN JESSO, MICHAEL JESSO, CAFÉ BORGIA, INC., and CAFÉ BORGIA REAL ESTATE, LLC., by and through their attorneys, KULWIN, MASCIOPINTO & KULWIN, LLP., and in support of their Complaint against Defendants, verify and state as follows.

## **NATURE OF THE CASE**

1.     This is an action arising from Defendants' violation of Plaintiffs' due process and equal protection rights arising under the United States Constitution and 42 U.S.C. § 1983 and for which Plaintiffs seek damages and injunctive relief.  As described below, Defendants have arbitrarily ignored Plaintiffs' application to renew their long-standing local liquor license without providing Plaintiffs with any notice or hearing as required by the Due Process Clause of the United States Constitution. Defendants also have wrongfully denied Plaintiffs their local liquor license in violation of the Equal Protection Clause because Defendants have routinely approved such applications to other similarly situated individuals in the past.  In addition, Defendants have violated Plaintiffs' due process and Fifth

**EXHIBIT**
tabbies
1

Amendment rights because Defendants have taken Plaintiffs' liquor license – which is
Case 1:08-cv-03047    Document 6-2    Filed 05/28/2008    Page 2 of 25
owned by Plaintiffs – without providing any just compensation.

## PARTIES

2.      Plaintiff KAREN JESSO is an individual and resident of Munster, Indiana and at all times was an owner of Plaitniff CAFÉ BORGIA, INC., a restaurant located at 17923 Torrence Ave., Lansing, Illinois, in the Northern District of Illinois.

3.      Plaintiff MICHAEL JESSO is an individual and resident of Munster, Indiana and at all times was an owner of Plaitniff CAFÉ BORGIA, INC., a restaurant located at 17923 Torrence Ave., Lansing, Illinois, in the Northern District of Illinois.

4.      Plaintiff CAFÉ BORGIA, INC. is a privately owned Illinois corporation, which during the time in question, had its principal place of business in the Northern District of Illinois, and was operated as an Italian restaurant, located in Lansing, Illinois.

5.      Plaintiff CAFÉ BORGIA REAL ESTATE, LLC. is a limited liability corporation which presently owns the building out of which Plaintiff CAFÉ BORGIA, INC. operated in Lansing, Illinois, namely, 17923 Torrence Ave., Lansing, Illinois (the "Lansing Building"). The member owners of Plaintiff CAFÉ BORGIA REAL ESTATE, LLC. are and have been Plaintiff KAREN JESSO and Plaintiff MICHAEL JESSO.

6.      Defendant DANIEL R. PODGORSKI is the Mayor of the Defendant VILLAGE OF LANSING, and pursuant to section 5-3 of the Village of Lansing Municipal Code ("Lansing Code") is the President of the Defendant VILLAGE OF LANSING BOARD OF TRUSTEES and therefore serves as the Village's Local Liquor Commissioner.

7.      Defendant VILLAGE OF LANSING BOARD OF TRUSTEES is responsible for enacting ordinances and formal policy relating to the Village's dispensation of local liquor licenses.  Also, Defendant VILLAGE OF LANSING BOARD OF TRUSTEES is responsible for holding public hearings on the revocation or non-renewal of local liquor

licenses.

8.     Defendant VILLAGE OF LANSING is a municipal corporation located in Cook County and the Northern District of Illinois.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction of this action by virtue of 28 U.S.C. §1343(a)(3) and §1343(a)(4), authorizing jurisdiction over claims brought under 42 U.S.C. §1983 to enforce rights guaranteed by the United States Constitution, and by virtue of 28 U.S.C. §1331, authorizing jurisdiction over claims that raise federal questions.

10.     Venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. §1391(b), because Defendants reside in this district and a substantial part of the claim occurred in this district.

## RELEVANT FACTS

11.     In approximately, 1978, Plaintiffs purchased the building located at 17923 Torrence Ave., Lansing, Illinois (the "Lansing Building"), and later, in the early 1980's, purchased an adjoining parcel of land to use for parking.

12.     In or about the middle 1980's, Plaintiffs began operating an Italian restaurant out of the Lansing Building called Café Borgia.

13.     Throughout the middle 1980's and up to approximately 1994, Plaintiffs repeatedly sought a local liquor license from the Village of Lansing, only to be told that no new applications were being issued and there were no new licenses to be had by anyone.

14.     In or about January 1994, the Village of Lansing announced that it was issuing a new local liquor license in order to facilitate the sale of a building between two private individuals, so that a previously closed restaurant, called Pipes and Pizza, could be purchased by new ownership and reopened with the ability to sell alcohol.

15.     In or about early 1994, Plaintiffs finally received an application for a local

-3-

16.     In response, in or about April 1994, Plaintiffs initiated litigation against the Village of Lansing for the denial of their 1994 application for a local liquor license.

17.     In or about the summer of 1995, the Village of Lansing and Plaintiffs settled their dispute by an agreement in which the Village of Lansing, through its attorney, specifically approved and authorized Plaintiffs' purchase of a local liquor license from an individual who previously operated a local bowling alley.

18.     Thereafter, from approximately 1995 through December 2005, Plaintiffs submitted yearly applications to renew their local liquor license, which renewal applications were routinely approved.

19.     Pursuant to Lansing Code §5-68, renewal applications for local liquor licenses may only be denied for cause.

20.     In or about 2005, Plaintiffs expended substantial sums of money, in sums totaling hundreds of thousands of dollars, to remodel the Lansing Building, including but not limited to, installing new awnings and an entirely new exterior.

21.     In or about late 2005 or early 2006, Defendants authorized an expansion of Plaintiffs' local liquor license to include hard alcohol, as well as beer and wine.

22.     In or about late 2006, Plaintiffs decided to open a another restaurant location, this one in Indiana.

23.     In or about late 2006, Plaintiffs listed the Lansing Building for sale, although at the time, they had not decided to close Café Borgia in Lansing and considered having two restaurant locations.

24.     In or about December 2006, Plaintiff KAREN JESSO called Defendant PODGORSKI, inquiring why Defendants had not yet sent to Plaintiffs their local liquor license renewal application.

not be receiving a renewal application or local liquor license for 2007 because Plaintiffs were opening another restaurant in a new city and had made Defendant PODGORSKI, as Mayor of Lansing, "look like a fool."

26.    By the end of December 2006, after complaining to the Village of Lansing's Chamber of Commerce and some additional discussions, Defendants did finally deliver to Plaintiffs a renewal application for their local liquor license, which was ultimately approved for 2007.

27.    In or about August 2007, Plaintiffs had yet to sell or lease the Lansing Building to another restauranteur, at least in part, because of Defendants' refusal to provide prospective purchasers with any reasonable certainty about their future ability to sell alcohol on the premises.

28.    In or about August 2007, Plaintiffs opened their second restaurant location in Munster, Indiana.

29.    In or about August 2007, Plaintiffs were forced to temporarily shut down the restaurant operations in Lansing, Illinois because of a skilled labor shortage that prevented Plaintiffs – at the time – from operating both of their locations.

30.    On or about December 27, 2007, Plaintiffs' business attorney went to the offices of Defendant PODGORSKI to inquire why Plaintiffs had not yet received their local liquor license renewal application like every other local liquor license holder.  Exhibit A (12/27/07 letter, incorporated herein by reference).

31.    On or about December 27, 2007, Plaintiffs' business attorney was informed by representatives of the Defendant VILLAGE OF LANSING that Defendant PODGORSKI had left explicit instructions that Plaintiffs were not to receive a renewal application unless Plaintiffs first met with Defendant PODGORSKI.  Plaintiffs' business attorney was further

filed thereafter would be null and void pursuant to Section 5-69 of the Lansing Code. Exhibit A (12/27/07 letter, incorporated herein by reference).

32.    Later on or about December 27, 2007, Plaintiffs' business attorney corresponded with the attorney for the Defendant VILLAGE OF LANSING, explaining Plaintiffs' request for a renewal application for its local liquor license, and the Defendant PODGORSKI's wrongful denial to issue a renewal application.  Exhibit B (12/27/07 letter, incorporated herein by reference).

33.    Plaintiffs' December 27, 2007 letter to the attorney for the Defendant VILLAGE OF LANSING concluded by stating, "[The] direction not to allow my client to file a timely renewal application is tantamount to taking their license without due process of law."  Exhibit B (12/27/07 letter, incorporated herein by reference).

34.    Shortly after sending this letter dated December 27, 2007, Plaintiffs, through their business attorney, received a renewal application for their local liquor license. On December 28, 2007, Plaintiffs, through their business attorney, submitted to Defendants their completed renewal application and included a check in the amount of $1,000, as required.  Exhibit C (Renewal application, incorporated herein by reference) & Exhibit D (1/16/08 letter, incorporated herein by reference).

35.    On or about January 16, 2008, Plaintiffs' business attorney sent another letter to Defendant PODGORSKI, explaining that Plaintiffs had yet to receive their 2008 local liquor license.  In his January 16, 2008 correspondence, Plaintiffs' business attorney stated:

> I am requesting that you issue their license for 2008 or indicate
> in writing why you are not going to issue their license, or why
> you are going to delay issuing their license.  As far as I know,
> my client have no violations against them and they fully qualify

Exhibit D (1/16/08 letter, incorporated herein by reference).

36.    As of this filing, Defendants have refused to deliver Plaintiffs' local liquor license for 2008 – and have provided no notice or hearing related to Plaintiffs' application for renewal of its local liquor license – which in turn has caused a cessation of any restaurant activities within the Lansing Building.

37.    There is no cause within the meaning of Lansing Code §5-68 for Defendants' refusal to renew Plaintiffs' local liquor license.

## COUNT 1 – (PROCEDURAL DUE PROCESS VIOLATION)

1-38.    Plaintiffs incorporate the foregoing paragraphs 1-8 and 11-37 as and for this paragraph 1-38 of this Count.

39.    Plaintiffs have a property interest – within the meaning of the due process clause of United States Constitution – in the renewal of their local liquor license, pursuant to well established federal law, *e.g., Club Misty, Inc. v. Laski*, 208 F.3d 615 (7th Cir. 2000) and *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir. 1983), and pursuant to Lansing Code §5-68, which only permits non-renewal of a local liquor license for cause.

40.    Plaintiffs also have a property interest in their local liquor license because, in the summer of 1995, Defendant VILLAGE OF LANSING, by and through the Village attorney, specifically approved and authorized Plaintiffs' purchase of the liquor license from an individual who previously operated a local bowling alley.

41.    Contrary to Plaintiffs' procedural due process rights to notice and a hearing, Defendants never responded to Plaintiffs' renewal application, dated and received by Defendants on December 28, 2007.  Exhibit C & D.

42.    Because of Defendants' non-action, Plaintiffs are being deprived of their right to appeal their matter to the State of Illinois Liquor Commission, which has jurisdiction to

proceedings before Defendant PODGORSKI. *See* Lansing Code, § 5-33 ("All appeals to

the Illinois Liquor Control Commission by a village liquor licensee of a decision, order or

action by the local liquor control commissioner . . . shall be limited to review of the official

record of the formal proceedings before the commissioner").

43.    Defendants' actions, and each of them, were done under color of law to

deprive Plaintiffs of their procedural due process rights under the Fourteenth Amendment

to the U.S. Constitution and thus subject Defendants to liability pursuant to 42 U.S.C. §

1983.

44.    Defendant VILLAGE OF LANSING is liable for the violation of Plaintiffs'

procedural due process rights because the acts of Defendant PODGORSKI and/or the

Defendant VILLAGE OF LANSING BOARD OF TRUSTEES, and each of them, including

but not limited to their refusal to provide Plaintiffs with notice and a hearing for their *de

facto* refusal to renew Plaintiffs' local liquor license, were made in their respective

capacities as having final authority and policy making responsibility for the Defendant

VILLAGE OF LANSING.

45.    As a direct and proximate result of the above-described unlawful and

unconstitutional acts, policies, and/or customs of the Defendants, Plaintiffs, and each of

them, have suffered injury and damage, including but not limited to, lost income, mental

and emotional anguish and distress, and attorneys' fees and costs.

46.    As a direct and proximate result of the above-described unlawful and

unconstitutional acts, policies, and/or customs of the Defendants, Plaintiffs, and each of

them, have suffered irreparable injury, for which no adequate remedy at law exists,

including but not limited to being deprived of their rights guaranteed under the United

Constitution and being wrongfully deprived of notice and a hearing on their renewal

application for their local liquor license, which is needed by Plaintiffs.

## **Prayer for Relief**

WHEREFORE, Plaintiffs request that this Court:

A.    Order Defendants to provide Plaintiffs with their procedural due process rights, which would include but not necessarily be limited to, either approval of their license renewal application or, in the alternative, notice and a public hearing;

B.    Order Defendants to make Plaintiffs whole by providing appropriate monetary relief caused by Defendants' illegal and unconstitutional practices, policies, and customs, including but not limited to lost income, mental distress damages, attorneys' fees, costs, and exemplary or nominal damages, if appropriate; and

C.    Enjoin Defendants from: (i) reissuing the local liquor license previously issued to Plaintiffs to some other entity or person, and/or (ii) cancelling the local liquor license previously issued to Plaintiffs and/or reducing the number of total available local liquor licenses pursuant to Lansing Code § 5-54(b) or any other Village ordinance.

## **COUNT 2 – (FIFTH AMENDMENT/DUE PROCESS VIOLATION)**

1-47.    Plaintiffs incorporate the foregoing paragraphs 1-8 and 11-37 as and for this paragraph 1-47 of this Count.

48.    Defendants have unconstitutionally deprived Plaintiffs of their private property without just compensation.

49.    Plaintiffs possess a substantive property right, and ownership interest, in their local liquor license because, in the summer of 1995, the Defendant VILLAGE OF LANSING, by and through the Village attorney, specifically approved and authorized their purchase of the liquor license from an individual who previously operated a local bowling alley called Moeller's Lanes.

50.    Defendants have unconstitutionally taken Plaintiffs' local liquor license by

-9-

refusing to approve Plaintiffs' liquor license renewal application, dated and received on
Case 1:08-cv-03047    Document 6-2    Filed 05/28/2008    Page 10 of 25
December 28, 2007, and never reissuing Plaintiffs' local liquor license.

51.     Defendants have offered no compensation in return for taking Plaintiffs' local liquor license.

### **Prayer for Relief**

WHEREFORE, Plaintiffs request that this Court:

A.     Order Defendants to provide Plaintiffs with their local liquor license;

B.     Order Defendants to make Plaintiffs whole by providing appropriate monetary relief in exchange for Defendants' illegal and unconstitutional taking of Plaintiffs' private property; and

C.     Enjoin Defendants from: (i) reissuing the local liquor license previously issued to Plaintiffs to some other entity or person, and/or (ii) cancelling the local liquor license previously issued to Plaintiffs and/or reducing the number of total available local liquor licenses pursuant to Lansing Code § 5-54(b) or any other Village ordinance.

### **COUNT 3 – (EQUAL PROTECTION VIOLATION)**

1-52.   Plaintiffs incorporate the foregoing paragraphs 1-8 and 11-37 as and for this paragraph 1-52 of this Count.

53.     Defendants have violated Plaintiffs' equal protection rights under the Fourteenth Amendment to the U.S. Constitution, because Defendants have intentionally treated Plaintiffs differently from others similarly situated to them, and there is no rational basis for Defendants' treatment which is rooted in Defendant PODGORSKI's illegitimate animus for Plaintiffs.

54.     Upon information and belief, Defendants have in the past approved local liquor license renewal applications to businesses that are not then operating, either because they have gone out of business, are temporarily closed, and/or are being sold.

55.     For instance, and by way of example only, on information and belief, in 1995,

Moeller's Lanes, Inc. had gone out of business, but Defendant VILLAGE OF LANSING and

Defendant VILLAGE OF LANSING BOARD OF TRUSTEES allowed Moeller's Lanes, Inc.

not only to retain its local liquor license but actually obtain consideration from a private

entity in return for the sale of that local liquor license.

56.     Defendant PODGORSKI has admitted to Plaintiff KAREN JESSO that he has

refused to rule upon, and/or grant, Plaintiffs' local liquor license renewal application, not

for legitimate reasons, but because Plaintiff KAREN JESSO made him "look like a fool."

57.     Defendants' actions, and each of them, were done under color of law to

deprive Plaintiffs of their equal protection rights under the Fourteenth Amendment to the

U.S. Constitution and thus subject Defendants to liability pursuant to 42 U.S.C. § 1983.

58.     Defendant VILLAGE OF LANSING is liable for the violation of Plaintiffs' equal

protection rights because the acts of Defendant PODGORSKI and/or the Defendant

VILLAGE OF LANSING BOARD OF TRUSTEES, and each of them, including but not

limited to their refusal to renew Plaintiffs' local liquor license, were made in their respective

capacities as having final authority and policy making responsibility for the Defendant

VILLAGE OF LANSING.

59.     As a direct and proximate result of the above-described unlawful and

unconstitutional acts, policies, and/or customs of the Defendants, Plaintiffs, and each of

them, have suffered injury and damage, including but not limited to, lost income, mental

and emotional anguish and distress, and attorneys' fees and costs.

60.     As a direct and proximate result of the above-described unlawful and

unconstitutional acts, policies, and/or customs of the Defendants, Plaintiffs, and each of

them, have suffered irreparable injury, for which no adequate remedy at law exists,

including but not limited to being deprived of their rights guaranteed under the United

Constitution and being wrongfully deprived of their local liquor license.

### Prayer for Relief

WHEREFORE, Plaintiffs request that this Court:

A.    Order Defendants to provide Plaintiffs with their equal protection rights, which would include but not necessarily be limited to, approving their license renewal application;

B.    Order Defendants to make Plaintiffs whole by providing appropriate monetary relief caused by Defendants' illegal and unconstitutional practices, policies, and customs, including but not limited to lost income, mental distress damages, attorneys' fees, costs, and exemplary or nominal damages, if appropriate; and

C.    Enjoin Defendants from: (i) reissuing the local liquor license previously issued to Plaintiffs to some other entity or person, and/or (ii) cancelling the local liquor license previously issued to Plaintiffs and/or reducing the number of total available local liquor licenses pursuant to Lansing Code § 5-54(b) or any other Village ordinance.

### COUNT 4 – (EQUAL PROTECTION VIOLATION)

1-61.    Plaintiffs incorporate the foregoing paragraphs 1-8 and 11-37 as and for this paragraph 1-61 of this Count.

62.    Defendants have violated Plaintiffs' equal protection rights under the Fourteenth Amendment to the U.S. Constitution, because Defendants have intentionally treated Plaintiffs differently from others similarly situated to them, and there is no rational basis for Defendants' treatment which is rooted in Defendant PODGORSKI's illegitimate animus for Plaintiffs.

63.    Upon information and belief, Defendants have in the past assured prospective purchasers of closed restaurants that they would approve a local liquor license in order to facilitate the sale of that closed restaurant.

64.    For instance, and by way of example only, on information and belief, in early

1994, Defendant VILLAGE OF LANSING and Defendant VILLAGE OF LANSING BOARD
Case 1:08-cv-03047    Document 6-2    Filed 05/28/2008    Page 13 of 25
OF TRUSTEES assured a prospective purchaser of Pipes and Pizza restaurant that it
would receive a new liquor license, in order to facilitate the sale of that closed restaurant/building.

65.    Defendant PODGORSKI has admitted to Plaintiff KAREN JESSO that he has refused to rule upon, and/or grant, Plaintiffs' local liquor license renewal application, not for legitimate reasons, but because Plaintiff KAREN JESSO made him "look like a fool."

66.    Defendants' actions, and each of them, were done under color of law to deprive Plaintiffs of their equal protection rights under the Fourteenth Amendment to the U.S. Constitution and thus subject Defendants to liability pursuant to 42 U.S.C. § 1983.

67.    Defendant VILLAGE OF LANSING is liable for the violation of Plaintiffs' equal protection rights because the acts of Defendant PODGORSKI and/or the Defendant VILLAGE OF LANSING BOARD OF TRUSTEES, and each of them, including but not limited to their refusal to renew Plaintiffs' local liquor license, were made in their respective capacities as having final authority and policy making responsibility for the Defendant VILLAGE OF LANSING.

68.    As a direct and proximate result of the above-described unlawful and unconstitutional acts, policies, and/or customs of the Defendants, Plaintiffs, and each of them, have suffered injury and damage, including but not limited to, lost income, mental and emotional anguish and distress, and attorneys' fees and costs.

69.    As a direct and proximate result of the above-described unlawful and unconstitutional acts, policies, and/or customs of the Defendants, Plaintiffs, and each of them, have suffered irreparable injury, for which no adequate remedy at law exists, including but not limited to being deprived of their rights guaranteed under the United Constitution and being wrongfully deprived of their local liquor license.

WHEREFORE, Plaintiffs request that this Court:

A.    Order Defendants to provide Plaintiffs with their equal protection rights, which would include but not necessarily be limited to, approving their license renewal application;

B.    Order Defendants to make Plaintiffs whole by providing appropriate monetary relief caused by Defendants' illegal and unconstitutional practices, policies, and customs, including but not limited to lost income, mental distress damages, attorneys' fees, costs, and exemplary or nominal damages, if appropriate; and

C.    Enjoin Defendants from: (i) reissuing the local liquor license previously issued to Plaintiffs to some other entity or person, and/or (ii) cancelling the local liquor license previously issued to Plaintiffs and/or reducing the number of total available local liquor licenses pursuant to Lansing Code § 5-54(b) or any other Village ordinance.

Respectfully Submitted,

KULWIN, MASCIOPINTO & KULWIN, LLP.

By:_____
        Anthony J. Masciopinto
        One of the Attorneys for Plaintiffs


Shelly B. Kulwin
Anthony J. Masciopinto
Jeffrey R. Kulwin
KULWIN, MASCIOPINTO & KULWIN, LLP.
161 North Clark Street, Suite 2500
Chicago, Illinois 60601
T:  312.641.0300; F: 312.855.0350
amasciopinto@kmklawllp.com

Pursuant to 28 U.S.C. §1746, the undersigned declares, certifies, and verifies under penalties of perjury under the laws of the United States of America that the foregoing facts of Plaintiffs' Verified Complaint are true and correct, except as to those matters stated to be on information and belief and as to such matters, the undersigned declares, certifies, and verifies as aforesaid that she verily believes the same to be true.

05-23-08
Date

_____
KAREN JESSO, Individually and as
the Duly Authorized Representative of
CAFÉ BORGIA, INC. and
CAFÉ BORGIA REAL ESTATE, LLC.

**W. LEE NEWELL, JR.**

ATTORNEY AT LAW
134 PULASKI ROAD
CALUMET CITY, ILLINOIS 60409
TELEPHONE (708) 891-6200
FAX (708) 891-0809

December 27, 2007

Village of Lansing
Attn: Daniel Podgorski, Mayor
via Telefax 708-895-6878

Re: Cafe Borgia, Inc.
    Liquor License Application for
    Renewal

Dear Mayor Podgorski:

Please be advised that I represent Cafe Borgia, Inc. who are the holders of a liquor license in the Village of Lansing.

My client informed me that they never received an application to renew their existing liquor license. As I understand, that application is customarily mailed to each license holder. In any event they did not receive theirs. Accordingly I went to your office today and I was informed that you had issued instructions not to give my client a renewal application unless they first met with you. Your secretary indicated that you would be "out of town" until after the first of the year.

It is my further understanding that the renewal application is due by December 31, 2007. If you are out of town, conveniently, or otherwise, and you won't allow my clients to have a renewal application, their liquor license will lapse after 12/31/07.

This letter is a request that your office fax to my office immediately, an application to renew their liquor license. Your failure so to do will be considered accordingly. My client has no violations against them, and they fully qualify in every regard to maintain their existing license.

Yours very truly,

W. Lee Newell Jr.

EXHIBIT
1-A

cc: Dale Anderson, Village Attorney

# W. LEE NEWELL, JR.

## ATTORNEY AT LAW

134 PULASKI ROAD
CALUMET CITY, ILLINOIS 60409
TELEPHONE (708) 891-5200
FAX (708) 891-0809

12/27/08

Dale Anderson, Attorney for Lansing
via telefax 708-895-8815

Re: Cafe Borgia Inc.

Dear Mr. Anderson:

I am sending this to you in your capacity as attorney for the Village of Lansing.

Attached is a copy of the letter I faxed to the Mayor of Lansing. It is self explanatory.

At this time my client wants to apply to renew their existing license. If the Mayor thinks that the application should be rejected, that is his perrogative. But his direction not to allow my client to file a timely renewal application is tantamont to taking their license without due process of law.

Yours very truly,

W. Lee Newell Jr.

**EXHIBIT**

1-B



# APPLICATION FOR LIQUOR LICENSE
# VILLAGE OF LANSING
### 18200 Chicago Av.
### Lansing, IL 60438

License No. ___15___
Date Issued: _12/-1/06_
Expires: _12/31/07_
Fee Received: _1000 ⁻_

*************************************************************

The undersigned hereby makes application for the issuance of a liquor license, as hereinafter indicated, for the period ending _December 31_____ 20 _08_, making as part of said application, the following statements:

## CLASS OF LICENSE APPLIED FOR:

CLASS: _1 General_____ (As previously licensed)

1.  Licensee  _Cafe Borgia, Inc._
    <span style="font-size:smaller">(Individual, Partnership, Corporation)</span>

2.  Doing business as: _Cafe Borgia_
    <span style="font-size:smaller">(Name of Establishment)</span>

3.  Address of Business: _17923 Torrence Avenue, Lansing, Il._

4.  Character of Business: ___Restaurant_____
    <span style="font-size:smaller">(Restaurant, Grocery, Drugs, etc.)</span>

5.  In the past year, have any incidents of unusual nature taken place in this business that would jeopardize the issuance of this license?
    Yes (  ) No ( x )

6.  Check and fill out if applicable
    Assumed names:                  Date filed with County Clerk:_____
    Partnership:                    Date of formation:_____
    Illinois Corporation:           Date of incorporation: _11/26/86_
    Foreign Corporation:            State of incorporation:_____
    Foreign Corporation:            Date qualified to do business in IL.___

*Attach to this application a copy of any document(s) relating to your response to number 6.

EXHIBIT

_1-C_

Page 2

7.   Give your current State License Number:__ 07-1A-0021385 _____

8.   Give date you began liquor sales at the premises:_____ 6/10/95 _____

9.   If business premise is leased, give names and address of landlord:

     Name_____

     Address:_____
                    Street                    City,   State,   Zip,   Phone
     Term of Lease:_____
     **Attach a copy of said lease to this application.

10.  Is the location of applicant's business for which license is sought within
     one hundred feet of any church, school, hospital, home for the aged or
     indigent persons or for veterans, their spouse or children, or any naval or
     military station?_____No_____
     (A)   If answer to above is "YES", is applicant's place of business a hotel
           offering restaurant service, a regularly organized club, food shop, or
           other place where the sale of liquor is not the principal
           business?_____
     (B)   If answer to (A) is "YES", how long has the place of business been
           operating?_____

11.  If applicant warehouses liquor, give warehouse address:

     Address:_____

     City, State, Zip_____

12.  ILLINOIS BUSINESS TAX (IBT) Registration No.: 1936-7872 _____

13.  Give Document Control Number of your Federal Tax Stamp:

     2006-354-901-022; 2007 Applied for_____

14.  Are you delinquent in payment of Illinois Business Tax?
     YES (    ) NO ( x  )

15.  If retailer, are you delinquent under the 30 day Credit law?
     YES (    ) NO ( x   )

16.  Give your current business telephone number: (708  ) 474-5515 _____

Page 3

17.  If licensee is a corporation, insert name, address and telephone number, and submit a recent photo of resident manager:

Jose R. Lopez
_____
Name

1660 182nd St., Lansing, Il. 60438   708-743-9636
_____
Address                          Phone number

Questions 18 through 26 are directed to the applicant and other persons listed in question 27. If any questions are answered YES, provide full explanation on separate sheet and attach same to this application.

18.  Have you ever made an application for a Liquor License that has been denied? YES (    ) NO ( x )

19.  Have you ever had a previous Liquor License suspended/revoked? YES (    ) NO ( x )

20.  Have you ever been convicted of a Misdemeanor or Felony? YES (    ) NO ( x )

21.  Have you ever been convicted of a Gambling Offense? YES (    ) NO ( x )

22.  Do you possess a Federal Wagering or Gaming Device Stamp? YES (    ) NO ( x )

23.  Are you, or any other person, directly or indirectly involved in this place of business, a public official? YES (    ) NO ( x )

24.  Have you, or any other person, directly or indirectly involved in this place of business ever used an assumed name? YES (    ) NO ( x )

25.  Have you, or any other person, directly or indirectly involved in this place of business ever declared bankruptcy? YES (    ) NO ( x )

26.  Will the applicant or other members of the Corporation or Partnership actively manage this business? YES ( x ) NO (    )

27.  Individual applicant, sole owner, partnership, corporate officers, stockholders, (owning the aggregate more than 5% of the stock, including parent corporations), managers or agents conducting the business, must supply the following information. If additional space is needed, attach a supplement in the same format.

Page 5

## DOCUMENTATION REQUIREMENTS
### (NEW APPLICANTS OR TRANSFEREES ONLY)

1.  Certified copy of birth certificate.

2.  Certified copy of citizenship Papers (If foreign born)

3.  Drivers License (to establish residency, or,

4.  Voters Registration Card (to establish residency)

**THE DOCUMENTS THAT ARE REQUIRED WILL BE PRESENTED ALONG WITH THE APPLICATION. IF ONE OR MORE OF THESE DOCUMENTS CANNOT BE PRESENTED AT THE TIME OF THE APPLICATION, A LETTER WILL BE REQUIRED TO EXPLAIN THE REASON FOR THE NONCOMPLIANCE OF THIS PROJECT. A VERBAL EXPLANATION FOR THE NONCOMPLIANCE WILL NOT BE ACCEPTED.**

State of Illinois)
            )     SS
County of Cook)

### A F F I D A V I T

      The undersigned, being the applicant or authorized agent thereof, swear or affirm that the matters stated in the foregoing application are true and correct, and are made of my personal knowledge and information, and are made for the purpose of requesting the Village of Lansing to issue the license herein applied for and that the applicant is qualified and eligible to obtain the license applied for.

      I further swear of affirm that the applicant or his agents will not violate any laws of the United States of America, the State of Illinois, or the ordinances of the Village of Lansing, Cook County Illinois.

_____
Signature of Applicant or Authorized Agent

Attorney at Law
_____
Title or Position

12/28/07
_____
Date signed

Subscribed and sworn before me this   28th   day of   December  , 2 007 .

Notary Public: Connie J. Tolbert

```
OFFICIAL SEAL
CONNIE J. TOLBERT
NOTARY PUBLIC, STATE OF ILINOIS
MY COMMISSION EXPIRES 8-21-2008
```

Page 4

## (PLEASE PRINT)

27a.

Name __Karen Jesso_____ Title __Vice President-Sec__

Address __1729 Apple Blossom Dr., Munster, Ind. 46321__

Date of birth __06/07/55_____ Place of birth __East Chicago, In.__

Social Security No. __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_____ % Owned __50%__
<span style="font-size:smaller">City and state</span>

Name __Michael Jesso_____ Title __President-Treasurer__

Address __8120 Hohman Ave., Munster, Ind. 46321__

Date of birth __8/9/61_____ Place of birth __Hammond, In.__

Social Security No. __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_____ % Owned __50%__
<span style="font-size:smaller">City and state</span>

Name __Jose R. Lopez_____ Title __Manager__

Address __1660 182nd St., Lansing, Il. 60438__

Date of birth __1/29/78_____ Place of birth __Mexico__

Social Security No. __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_____ % Owned __0%__
<span style="font-size:smaller">City and state</span>

Name _____ Title _____

Address _____

Date of birth _____ Place of birth _____

Social Security No. _____ % Owned _____
<span style="font-size:smaller">City and state</span>

(NOTE; If, during the licensed period, any person NOT named in question 27 becomes an owner of record of more than 5% of the business stock, the Corporation must furnish the Commissioner within twenty days of the transaction, the name of the person(s) involved, the position held, and the percentage that is owned.)

# *Village of Lansing*

**COOK COUNTY. ILLINOS**



*Mayor*
**DANIEL PODGORSKI**

*Clerk*
**JEAN EISHA**

18200 CHICAGO AVENUE
LANSING, ILLINOIS 60438
PHONE:  (708) 895-7200
FAX:  (708) 895-6878

*Trustees*

**NORMAN ABBOTT**          **PATRICIA EIDAM**
**ANTHONY DE LAURENTIS**   **DAWN MYERS**
**NANCY EICHHORN**         **ROBERT RYAN**

## FACSIMILE TRANSMISSION SHEET

TO: *W. Lee Newell, Jr.*          DATE: *12/28/07*

FAX NO: *891-0809*                NO. OF PAGES: *6*
(INCLUDING COVER PAGE)

FROM: *Village of Lansing - Mayor's Office*

PHONE NO.: *895 - 7208*

SUBJECT: *Application for Liquor License*

COMMENTS:

IF YOU HAVE ANY PROBLEMS WITH THE TRANSMISSION OR IF YOU WISH TO
CONFIRM ITS RECEIPT, PLEASE CONTACT THE PERSON BELOW AT 708-895-
7200.

TRANSMITTED BY: *kl*

*5:00 PM*
*$1,000 ~*

**W. LEE NEWELL, JR.**
**Attorney at Law**
**134 Pulaski Road**
**Calumet City, IL  60409**
**708-891-6200**
**fax  708-891-0809**

January 16, 2008

By fax to 708-895-6878

Village of Lansing

Attn:  Daniel Podgorski, Mayor

RE:  Café Borgia, Inc
       Liquor License Application for Renewal

Dear Mayor Podgorski:

As I have heretofore advised you, I represent Café Borgia, Inc.

On December 28, 2007, I personally delivered my client's application to renew their existing liquor license, to your Office and at that time I tendered my check for $1,000.00 along with said application.

I checked with my bank today and that check has not yet been submitted.  My client's have not, as yet, received their liquor license for 2008.

On behalf of my clients, I am requesting that you issue their license for 2008 or indicate in writing why you are not going to issue their license, or why you are going to delay issuing their license.    As far as I know, my clients have no violations against them and they fully qualify in every regard to have their liquor license renewed for the year 2008.

Please let me hear from you as soon as practicable.

Very truly yours,

W. Lee Newell, Jr.

WLN:mo

EXHIBIT

*I-D*

MEMORY TRANSMISSION REPORT

```
                              TIME     : 01-16-2008   04:39PM
                              TEL NUMBER : +17088910809
                              NAME     : LAW OFFICES OF NEWELL/PRANSKE
```

| | | |
|---|---|---|
| FILE NUMBER | : | 756 |
| DATE | : | 01-16  04:37PM |
| TO | : | 8956878 |
| DOCUMENT PAGES | : | 001 |
| START TIME | : | 01-16  04:38PM |
| END TIME | : | 01-16  04:39PM |
| SENT PAGES | : | 001 |
| STATUS | : | OK |

FILE NUMBER   : 756

\*\*\* SUCCESSFUL TX NOTICE \*\*\*

---

WLN:mo

W. Leo Newell, Jr.

Very truly yours,

Please let me hear from you as soon as practicable.

On behalf of my clients, I am requesting that you issue their license for 2008 or indicate in writing why you are not going to issue their license, or why you are going to delay issuing their license. As far as I know, my clients have no violations against them and they fully qualify in every regard to have their liquor license renewed for the year 2008.

I checked with my bank today and that check has not yet been submitted. My client's have not, as yet, received their check liquor license for 2008.

On December 28, 2007, I personally delivered my client's application to renew their existing liquor license, to your Office and at that time I tendered my check for $1,000.00 along with said application.

As I have heretofore advised you, I represent Café Borgia, Inc.

Dear Mayor Podgorski:

RE:   Café Borgia, Inc.
      Liquor License Application for Renewal

Attn:   Daniel Podgorski, Mayor

Village of Lansing

By fax to 708-895-6878

January 16, 2008

W. LEE NEWELL, JR.
Attorney at Law
134 Pulaski Road
Calumet City, IL  60409
708-891-6200
Fax 708-891-0809

TIMES

pages

Centralbank
may boost
interest rates
Page A-3

Newsstan

for Ca...
school...

EXHIBIT

2

Case 1:08-...0030... Document... Filed 05/25/20... Page 1 of 2

# Restaurant owners upset over beer, wine license

**By SANDRA GUY**
Times Staff Writer

LANSING – Two restaurant owners who won a battle with Lansing seven years ago to allow customers to bring in their own liquor are upset that village trustees have granted what they consider an unfair advantage to the soon-to-be-reopened Pipes and Pizza Restaurant.

One of those speaking out is Karen Jesso, who co-owns Cafe Borgia, 17923 Torrence Ave., with her husband, Mike.

She said last week that she is considering taking legal action against Lansing because of the Village Board's 4-1 vote on Jan. 18 creating a new beer and wine license classification in hopes of salvaging the Pipes and Pizza Restaurant as a key attraction in the downtown business district.

The new license will allow the restaurant to serve beer and wine with meals from 11 a.m. to 10 p.m. on weekdays and from 11 a.m. to 11 p.m. on Saturdays.

Karen Jesso said she has applied unsuccessfully for a liquor license for her restaurant for the past eight years.

She said she also is upset for Rosemarie Lotspeich, who co-owns Rosemarie's Ger...

**See LICENSE, Page A-...**

ders why the new owner of Pipes and Pizza should be given special consideration to make his business successful.

"We have proved it can be done without a liquor license. Why can't they do that?" she said. "It takes a lot of factors to run a business – hard work, honesty, good rapport with your customers and good food, of course."

Lotspeich said she prides herself in working well with village officials and doesn't believe Mayor Bob West is solely to blame for the approval of the special license classification.

West, who also serves as the village liquor commissioner, has said he will issue the liquor license to Pipes and Pizza's new owner when all the necessary license application requirements are met.

Jesso expressed outrage at the village's action, saying the Village Board "sure made an exception quickly" for the owners of Pipes and Pizza.

The four co-owners of Pipes and Pizza – Archie Boomsma of Lansing; and three cousins – are selling the shuttered building to David Wickerham, who previously played a pipe organ that gave the restaurant its claim to fame. Wickerham has said previously that he hopes to reopen the eatery by mid-March, if weather permits.

Jesso said she believes village officials can create other exceptions if they choose.

"This seems to be mayor's whim. I'm going to get to the bottom of this," she said.

Daniel Hanley, Jesso's lawyer, accused the village of "tilting the playing field" for the Pipes and

Pizza proprietor.

"That's not right," he said, "especially since there are two successful restaurants that have shown they can operate" without the liquor license.

Hanley represented Jesso in a 1987 Cook County Chancery Court lawsuit against the village that resulted in Judge Joseph Wosik declaring unconstitutional a village ordinance that purportedly banned restaurant patrons from bringing their own liquor into restaurants that had no liquor serving licenses.

"We're investigating the whole matter ... taking it one step at a time," Hanley said of the Pipes and Pizza decision.

Village Attorney Thomas Panichi repeated Friday the Village Board's reasons for granting the exception to the Pipes and

Pizza restaurant.

The primary reasons are the building has historic significance as the former site of the Lans theater, and has become an eyesore and a liability for the soon-to-be-renovated center of the downtown business district. The village refused to grant ... and Pizza a liquor license before closed four years ago.

A reopened, family-oriented restaurant and entertainment center also would attract shoppers to the downtown area, Panichi said.

He also explained that the ... ing's elected officials continue to try to reflect the village's conservative heritage by keeping a tight rein on liquor licenses. State law gives villages the right to limit the number and location of liquor licenses.

...an Kitchen at 2445 Ridge Road, ...ecause Lotspeich has been waiting 18 years for a liquor license, to o avail.

Lotspeich, who co-owns Rose...arie's with her husband, Joseph, ...aid Friday she has no plans to ...ke legal action.

But she has already arranged ... move her restaurant to Lyn... by early spring if all goes ...ell. Part of her decision was ...sed on her long-standing inabil... to obtain a beer and wine li...nse, she said.

"I don't like drunk people," ...tspeich explained. "But with ...rman food, good German beer ... wine goes a long way. I just ...nk we've been treated unfair...

Lotspeich said she also won-

...ror the tender...
proach...o make loans...
...rom the government to student...
through the schools, which already
do much of the loan paperwork.

In the Bush administration, Si-
mon was faced with a veto threat
and was forced to accept a compro-
mise for only a pilot program cov-
ering 5 percent of the student
loans. The expanded version
backed by Clinton will rise over
five years to a minimum of 60 per-

...any ...id, will be
...xplace mentors and
s work will be structured
...e to their work experience.
Having a fellow Democrat in
the White House generally has
been a boon for Simon, helping
him bring to fruition some ideas he
was pushing with little success dur-
ing the Republican administra-

# Lansing to hold hearing on Cafe Borgia liquor license denial

**Times Staff Report**

LANSING – The village of Lansing will hold a Liquor Commission hearing at 10 a.m. Tuesday to get public input on the denial of a liquor license to Cafe Borgia, 17923 Torrence Ave., Lansing.

On March 17, village trustees denied by a 4-2 vote a request by owners Karen and Michael Jesso for a beer and wine license.

The village typically denies requests for new liquor licenses. However, the village had deviated from that policy in January, granting a special license to Pipes and Pizza, a restaurant that investors wanted to open in the former Lans Theater building.

Trustees said they made an exception in that case because they wanted to remove an eyesore from the revitalized Ridge

Road business district. The investors said they would not reopen Pipes and Pizza unless the license was granted.

The Jessos, who have been seeking a beer and wine license for several years, have claimed that they were discriminated against by the village. They have retained a Chicago law firm to advise them of possible legal action against the village.

Presently, patrons of Cafe Borgia may bring their own liquor to the restaurant. Rosemarie's on Ridge Road also allows customers to bring liquor. However, the village has passed an ordinance that prohibits any other restaurants from letting patrons bring alcohol.

The restaurant's management declined to comment on the upcoming hearing, saying that lawyers advised them not to speak with the media.

## DUI alle

LANSIN
Iocco, 37,
wood Ave.,
rested for al
driving early
He was ch
ving while u
ence of al
transportatio
driving with
ver's license
lane usage, p
Iocco near
squad car at
and Burnham
then continu
Burnham to
then west on
said. Iocco alle
the center lin
and was sto
rence Avenue
When he
vehicle, Io
stumbled a
legedly fail
tests and
breath-al
said.

# SCHIFF HARDIN & WAITE

A Partnership Including Professional Corporations

7200 Sears Tower, Chicago, Illinois 60606 · Telephone (312) 876-1000 · Twx 910-221-2463

Facsimile (312) 258-5600

CLIENT/MATTER NO.: **21059-0000**

# FACSIMILE TRANSMITTAL SHEET

**TO THE FOLLOWING**:

TO: NAME: **Karen Jesso**

COMPANY: **Cafe Borgia**

FACSIMILE NO. **312-288-1995**     COMPANY NO.: **312-288-3339**

TO: NAME: **Dale Anderson**

COMPANY: **Village Attorney, Village of Lansing**

FACSIMILE NO. **708-895-4089**     COMPANY NO.: **708-895-6663**

TO: NAME: **Ron Primack**

COMPANY:

FACSIMILE NO. **708-895-0220**     COMPANY NO.: **708-895-2203**

FROM: **Ruth E. Krugly**     Direct Dial Telephone: **(312) 258-5719**

Transmission consists of cover sheet plus **3** page(s).

If there are any problems with this transmission, please call (312) 258-4677.

COMMENTS: **For your review and comment.**

IMPORTANT - THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT READING, DISSEMINATING, DISTRIBUTING OR COPYING THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

*(For Internal Use Only:)* PLEASE RETURN THIS DOCUMENT TO:

■ Attorney Name: **Ruth E. Krugly**

□ Secretary Name: _____

Transmittal Problems:

Time

□ Constant Busy _____
□ Constant Ringing
□ Bad Line _____
□ Equipment Problem

SENT OUT:

Time: _____ A.M./P.M.   By: _____

**EXHIBIT**

**3**

No. 8970   P. 1/4

Mar. 27. 1995   2:56PM

# AGREEMENT



THIS AGREEMENT is entered into this _____ day of _____, 1995, between CAFE

BORGIA, INC., an Illinois corporation, and MOELLER LANES, an _____ corporation.

### W I T N E S S E T H:

WHEREAS, Moeller Lanes is currently the holder of Village of Lansing Liquor License No. 4;

and

WHEREAS, said license is a Class 4 Liquor License, Retail Sale of Alcoholic Liquor and Beer,

only for consumption on bowling alley premises, and only to be served within an enclosure which is

separated from the other facilities within the building; and

WHEREAS, Moeller Lanes wishes to transfer to Cafe Borgia, Inc. all of its rights in Liquor

License No. 4, pursuant to the terms and conditions set forth herein and also pursuant to the parties'

separate agreement pertaining to the purchase by Cafe Borgia, Inc., of a portion of the business assets

of Moeller Lanes;

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other

good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties hereby

agree and promise as follows:

1.    Moeller Lanes agrees to transfer to Cafe Borgia, Inc. all of its rights in Liquor License

No. 4, and Cafe Borgia, Inc. agrees to pay to Moeller Lanes the amount of Twelve Thousand Five

Hundred Dollars ($12,500.00) in two installments as follows:

      a.     A payment of Six Thousand Two Hundred Fifty Dollars ($6,250.00) on or before

             May 1, 1995, and

      b.     A payment of Six Thousand Two Hundred Fifty Dollars ($6,250.00) on or before

             May 1, 1996,

subject to the following conditions:

i.     Approval by the Village of Lansing of the transfer of License No. 4 from Moeller Lanes to Cafe Borgia, and approval of the necessary amendments to said liquor license required to make it a beer and wine license, suitable for the premises located at 17923 Torrence Avenue (Cafe Borgia).

ii.     The payment due from Cafe Borgia to Moeller Lanes on May 1, 1996, shall be contingent on the reissuance of the license by the Village of Lansing on January 1, 1996. In the event the license is not renewed, Cafe Borgia shall notify Moeller Lanes in writing on or before May 1, 1996 that the license has not been renewed by the Village of Lansing and that, accordingly, no payment is due to Moeller Lanes under the terms of this Agreement.

2.     All notices required hereunder shall be in writing and shall be deemed to have been given or made when delivered personally or when mailed by registered or certified mail, postage prepaid, addressed as follows:

If to Cafe Borgia:     Cafe Borgia
17923 Torrence Avenue
Lansing, Illinois 60438
Attention: Karen Jesso

If to Moeller Lanes:     Moeller Lanes
[address]

or at such other address or addresses that shall be designated in writing from time to time by either party.

3.     This Agreement is entered into in Chicago, Illinois, and is governed by the laws of the State of Illinois.

-2-

4. This Agreement constitutes the entire agreement between the parties, and no other agreement, oral or written, exists between the parties. No provision may be modified in any respect unless such modification is in writing and signed by both parties.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed in two or more counterparts, each completed set of which constitutes an original.

CAFE BORGIA, INC.                         MOELLER LANES

By: _____            By: _____
    Karen Jesso

-3-

# SCHIFF HARDIN & WAITE

A Partnership Including Professional Corporations

7200 Sears Tower, Chicago, Illinois 60606 · Telephone (312) 876-1000 · Twx 910-221-2463

Facsimile (312) 258-5600

CLIENT/MATTER NO.: __21059-0000__

# FACSIMILE TRANSMITTAL SHEET

## TO THE FOLLOWING:

TO: NAME: __Dale Anderson__

COMPANY: __Village Attorney, Village of Lansing__

FACSIMILE NO. __708-895-4089__     COMPANY NO.: __708-895-6663__

TO: NAME: __Ron Primack__

COMPANY:

FACSIMILE NO. __708-895-0220__     COMPANY NO.: __708-895-2203__

TO: NAME: __Karen Jesso__

COMPANY: __Cafe Borgia__

FACSIMILE NO. __312-288-1995__     COMPANY NO.: __312-288-3339__

FROM: __Ruth E. Krugly__     Direct Dial Telephone: __(312) 258-5719__

Transmission consists of cover sheet plus __4__ page(s).

If there are any problems with this transmission, please call (312) 258-4677.

**COMMENTS:** __Dale — Enclosed please find the final changes agreed to by the parties.  Please__
__advise as soon as possible as to the status of this matter at the Village. I look forward to hearing__
__from you.__

IMPORTANT - THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT READING, DISSEMINATING, DISTRIBUTING OR COPYING THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

*(For Internal Use Only:)* PLEASE RETURN THIS DOCUMENT TO:

■ Attorney Name: __Ruth E. Krugly__

□ Secretary Name: _____

Transmittal Problems:
                                              Time
□ Constant Busy _____
□ Constant Ringing _____
□ Bad Line _____
□ Equipment Problem _____

SENT OUT:

Time: _____ A.M./P.M.  By: _____

2/94

# AGREEMENT

THIS AGREEMENT is entered into this ____ day of _____, 1995, between CAFE BORGIA, INC., an Illinois corporation, and MOELLER LANES, an _____ corporation.

## W I T N E S S E T H:

WHEREAS, Moeller Lanes is currently the holder of Village of Lansing Liquor License No. 4; and

WHEREAS, said license is a Class 4 Liquor License, Retail Sale of Alcoholic Liquor and Beer, only for consumption on bowling alley premises, and only to be served within an enclosure which is separated from the other facilities within the building; and

WHEREAS, Moeller Lanes wishes to transfer to Cafe Borgia, Inc. all of its rights in Liquor License No. 4, pursuant to the terms and conditions set forth herein and also pursuant to the parties' separate agreement pertaining to the purchase by Cafe Borgia, Inc., of a portion of the business assets of Moeller Lanes;

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties hereby agree and promise as follows:

1.    Moeller Lanes agrees to transfer to Cafe Borgia, Inc. all of its rights in Liquor License No. 4 (the "License"), and Cafe Borgia, Inc. agrees to pay to Moeller Lanes the amount of Twelve Thousand Five Hundred Dollars ($12,500.00) in two installments as follows:

      a.    A payment of Six Thousand Two Hundred Fifty Dollars ($6,250.00) on or before May 1, 1995, and

      b.    A payment of Six Thousand Two Hundred Fifty Dollars ($6,250.00) on or before May 1, 1996,

subject to the following conditions:

i.  Approval by the Village of Lansing of the transfer of License No. 4 from Moeller Lanes to Cafe Borgia, and approval of the necessary amendments to said liquor license required to make it a beer and wine license, suitable for the premises located at 17923 Torrence Avenue (Cafe Borgia).

ii.  Except as provided below, the payment due from Cafe Borgia to Moeller Lanes on May 1, 1996, shall be contingent on the reissuance of the License by the Village of Lansing on or about January 1, 1996.  In the event the License is not renewed, Cafe Borgia shall notify Moeller Lanes in writing on or before May 1, 1996 that the License has not been renewed by the Village of Lansing and that, accordingly, no payment is due to Moeller Lanes under the terms of this Agreement.  If, however, the License is not renewed or is revoked because of unlawful conduct by Cafe Borgia, Inc. or its agents which renders it ineligible for a liquor license, Cafe Borgia, Inc. shall be required to pay the second installment due hereunder; provided, however, that in the event the Village's decision not to renew the License or to revoke the License arises from a zoning violation or from circumstances which existed or were approved by the Village at the time this Agreement was entered into, Cafe Borgia, Inc. shall not be required to make a second payment to Moeller Lanes.

2.  A security interest in the License shall be and is hereby granted by Cafe Borgia, Inc. to Moeller Lanes, whereby the License shall, subject to the approval of the Village of Lansing, be transferred back to Moeller Lanes in the event Cafe Borgia, Inc. fails to make the payments required

-2-

under the terms of this Agreement. Cafe Borgia, Inc. shall not transfer the License or any of its rights thereunder to any other party during the term of this Agreement.

    3.    All notices required hereunder shall be in writing and shall be deemed to have been given or made when delivered personally or when mailed by registered or certified mail, postage prepaid, addressed as follows:

| | |
|---|---|
| If to Cafe Borgia: | Cafe Borgia<br>17923 Torrence Avenue<br>Lansing, Illinois 60438<br>Attention: Karen Jesso |
| If to Moeller Lanes: | Moeller Lanes<br>c/o Ronald N. Primack<br>18607 Torrence Avenue, Suite 2B<br>Lansing, Illinois 60438 |

or at such other address or addresses that shall be designated in writing from time to time by either party.

    4.    This Agreement is entered into in Chicago, Illinois, and is governed by the laws of the State of Illinois.

    5.    This Agreement constitutes the entire agreement between the parties, and no other agreement, oral or written, exists between the parties. No provision may be modified in any respect unless such modification is in writing and signed by both parties.

    IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed in two or more counterparts, each completed set of which constitutes an original.

CAFE BORGIA, INC.               MOELLER LANES

By: _____    By: _____
    Karen Jesso

## Guaranty

I hereby individually, unconditionally and irrevocably guarantee the performance of each and every covenant of Cafe Borgia, Inc. under this Agreement.

Karen Jesso

-4-

# SCHIFF HARDIN & WAITE
A Partnership Including Professional Corporations

Chicago
Washington
New York
Peoria
Merrillville

7200 Sears Tower, Chicago, Illinois 60606-6473
Telephone (312) 876-1000   Facsimile (312) 258-5600

Ruth E. Krugly
Ms. Krugly's Direct Dial Number:
(312) 258-5719

April 28, 1995

## VIA FACSIMILE

Dale Anderson, Esq.
Village Attorney
Village of Lansing
18200 Chicago Avenue
Lansing, IL 60438-3012

Re:    Agreement between Cafe Borgia, Inc. and Moeller Lanes, Inc.

Dear Dale:

Enclosed please find an executed copy of the agreement between Cafe Borgia, Inc. and Moeller Lanes, Inc.

Please send me draft copies of the ordinances you are preparing with respect to this matter, and please advise me as to when these matters will be before the Village Board of Lansing for their consideration.

Thank you for your help in this matter.

Very truly yours,

Ruth E. Krugly

Ruth E. Krugly

REK/mbf
Enclosure
cc:    Karen Jesso
       Katharine L. Bensen

EXHIBIT
4

**AGREEMENT**

THIS AGREEMENT is entered into this 21st day of ___April___, 1995, between CAFE BORGIA, INC., an Illinois corporation ("Cafe Borgia"), and MOELLER LANES, INC., an Illinois corporation ("Moeller Lanes").

W I T N E S S E T H:

WHEREAS, Moeller Lanes is currently the holder of Village of Lansing Liquor License No. 4; and

WHEREAS, said license is a Class 4 Liquor License, Retail Sale of Alcoholic Liquor and Beer, only for consumption on bowling alley premises, and only to be served within an enclosure which is separated from the other facilities within the building; and

WHEREAS, Moeller Lanes wishes to transfer to Cafe Borgia all of its rights in Liquor License No. 4, pursuant to the terms and conditions set forth herein and also pursuant to the parties' separate agreement pertaining to the purchase by Cafe Borgia, of a portion of the business assets of Moeller Lanes;

NOW, THEREFORE, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and adequacy of which are acknowledged, the parties hereby agree and promise as follows:

1.      Moeller Lanes agrees to transfer to Cafe Borgia all of its rights in Liquor License No. 4 (the "License"), and Cafe Borgia agrees to pay to Moeller Lanes the amount of Twelve Thousand Five Hundred Dollars ($12,500.00) in two installments as follows:

a.      A payment of Six Thousand Two Hundred Fifty Dollars ($6,250.00) on or before June 1, 1995, and

b.      A payment of Six Thousand Two Hundred Fifty Dollars ($6,250.00) on or before June 1, 1996,

subject to the following conditions:

    i.    Approval by the Village of Lansing of the transfer of License No. 4 from Moeller Lanes to Cafe Borgia, and approval of the necessary amendments to said liquor license required to make it a beer and wine license, suitable for the premises located at 17923 Torrence Avenue (Cafe Borgia).

    ii.    Except as provided below, the payment due from Cafe Borgia to Moeller Lanes on June 1, 1996, shall be contingent on the reissuance of the License by the Village of Lansing on or about January 1, 1996. In the event the License is not renewed, Cafe Borgia shall notify Moeller Lanes in writing on or before June 1, 1996 that the License has not been renewed by the Village of Lansing and that, accordingly, no payment is due to Moeller Lanes under the terms of this Agreement. If, however, the License is not renewed or is revoked because of unlawful conduct by Cafe Borgia or its agents which renders it ineligible for a liquor license, Cafe Borgia shall be required to pay the second installment due hereunder; provided, however, that in the event the Village's decision not to renew the License or to revoke the License arises from a zoning violation or from circumstances which existed or were approved by the Village at the time this Agreement was entered into, Cafe Borgia shall not be required to make a second payment to Moeller Lanes.

2.    All notices required hereunder shall be in writing and shall be deemed to have been given or made when delivered personally or when mailed by registered or certified mail, postage prepaid, addressed as follows:

If to Cafe Borgia:          Cafe Borgia
                            17923 Torrence Avenue
                            Lansing, Illinois 60438
                            Attention: Karen Jesso

If to Moeller Lanes:        Moeller Lanes
                            c/o Ronald N. Primack
                            18607 Torrence Avenue, Suite 2B
                            Lansing, Illinois 60438

or at such other address or addresses that shall be designated in writing from time to time by either party.

3.    This Agreement is entered into in Chicago, Illinois, and is governed by the laws of the State of Illinois.

4.    This Agreement constitutes the entire agreement between the parties, and no other agreement, oral or written, exists between the parties. No provision may be modified in any respect unless such modification is in writing and signed by both parties.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed in two or more counterparts, each completed set of which constitutes an original.


CAFE BORGIA, INC.                    MOELLER LANES, INC.

By: _____        By: *Elmer Moeller*
        Karen Jesso


## Guaranty

I hereby individually, unconditionally and irrevocably guarantee the performance of each and every covenant of Cafe Borgia, Inc. under this Agreement.


                            _____
                            Karen Jesso


-3-

If to Cafe Borgia:

Cafe Borgia
17923 Torrence Avenue
Lansing, Illinois 60438
Attention: Karen Jesso

If to Moeller Lanes:

Moeller Lanes
c/o Ronald N. Primack
18607 Torrence Avenue, Suite 2B
Lansing, Illinois 60438

or at such other address or addresses that shall be designated in writing from time to time by either party.

3.     This Agreement is entered into in Chicago, Illinois, and is governed by the laws of the State of Illinois.

4.     This Agreement constitutes the entire agreement between the parties, and no other agreement, oral or written, exists between the parties.  No provision may be modified in any respect unless such modification is in writing and signed by both parties.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed in two or more counterparts, each completed set of which constitutes an original.

CAFE BORGIA, INC.                    MOELLER LANES, INC.

By: _____          By: _____
     Karen Jesso

## Guaranty

I hereby individually, unconditionally and irrevocably guarantee the performance of each and every covenant of Cafe Borgia, Inc. under this Agreement.

_____
Karen Jesso

-3-

# SCHIFF HARDIN & WAITE
A Partnership Including Professional Corporations

Chicago
Washington
New York
Peoria
Merrillville

7200 Sears Tower, Chicago, Illinois 60606-6473
Telephone (312) 876-1000  Facsimile (312) 258-5600

Ruth E. Krugly
Ms. Krugly's Direct Dial Number:
(312) 258-5719

April 27, 1995

Ms. Karen Jesso
5020 South Lake Shore Drive
Apartment 3217
Chicago, IL 60438

      **Re:**    **Agreement between Cafe Borgia, Inc. and Moeller Lanes, Inc.**

Dear Karen:

      Enclosed please find a copy of the above-referenced agreement executed by Moeller Lanes, Inc., together with a bill of sale.

      Very truly yours,

*Ruth E. Krugly*

Ruth E. Krugly

REK/mbf
Enclosure

## BILL OF SALE

**GRANTOR:**  MOELLER LANES, INC., in consideration of Ten Dollars ($10.00) receipt whereof is hereby acknowledged, does hereby sell, assign, transfer and set over to:

**GRANTEE:**  CAFE BORGIA, INC., the following described property, to wit:

        1 cash register, 2 cases of beer.


     **IN WITNESS WHEREOF**, Grantor has signed and sealed this Bill of Sale     at     _____Lansing_____,
Illinois on this   _21st_  day of _____April_____, 1995.


                **GRANTOR:**  MOELLER LANES, INC.

                          By _Elmer Moeller_____
                             Elmer Moeller




Prepared by:   Ronald N. Primack
               Attorney at Law
               18607 Torrence Avenue, Suite 2B
               Lansing, Illinois 60438

C:\WP51\REALESTA\Moeller.Sal

*Dale A. Anderson*
**Attorney At Law**

May 2, 1995

Ms. Ruth E. Krugly
Schiff Hardin & Waite
Attorneys at Law
7200 Sears Towner
Chicago, Illinois 60606

Re:    Village of Lansing -
        Cafe Borgia, Inc.

Dear Ruth:

I am in receipt of a telefax of your letter of April 28, 1995. In accordance therewith, I enclose herewith a <u>draft</u> copy of an Ordinance which I anticipate will be presented to and reviewed by the Village Board at its Committee of the Whole Meeting this month. If this time table is followed and the Board authorizes the adoption of such Ordinance, I would anticipate the possibility that the same would be presented for adoption and enactment at the regular Village Board Meeting on May 16, 1995. I will keep you advised of all further status.

Sincerely,

Dale A. Anderson
DAA/sk

18225 Burnham Avenue, Lansing, Illinois 60438 Telephone (708) 895
Fax: (708) 895-4089

**EXHIBIT**
5

VILLAGE OF LANSING
COOK COUNTY, ILLINOIS

ORDINANCE NO. _____

AN ORDINANCE AMENDING CHAPTER 5,
SECTIONS 5-53, 5-54, 5-56, 5-67 & 5-69
OF THE VILLAGE OF LANSING CODE OF ORDINANCES
RELATING TO THE CLASSES, NUMBER, FEES AND DURATION
OF LIQUOR LICENSES IN LANSING, ILLINOIS

ADOPTED BY

PRESIDENT AND BOARD OF TRUSTEES

VILLAGE OF LANSING

COOK COUNTY, ILLINOIS

This _____ day of _____, 1995

Published in pamphlet form by authority of the President and Board of Trustee of the Village of Lansing, Cook County, Illinois, this _____ day of _____, 1995.

ORDINANCE NO._____

AN ORDINANCE AMENDING CHAPTER 5,
SECTIONS 5-53, 5-54, 5-56, 5-67 & 5-69
OF THE VILLAGE OF LANSING CODE OF ORDINANCES
RELATING TO THE CLASSES, NUMBER, FEES AND DURATION
OF LIQUOR LICENSES IN LANSING, ILLINOIS

WHEREAS, the President and Board of Trustees of the Village of Lansing, heretofore, on January 18, 1994, authorized the issuance of a Ridge Road TIF District Historic Theater Building Liquor License which permitted the sale of beer and wine only, subject to specific restriction, and which license was never issued because the restaurant on the premises has been closed for more than four years; and

WHEREAS, the President and Board of Trustees in connection with the enactment of Ordinance No. 94-002, determined that the issuance of such a license would lead to the reopening of the restaurant, thereby promoting the Downtown TIF District, providing real estate and sales tax revenues, preserving the Theater Marquee as a historic landmark and otherwise benefiting the Village; and

WHEREAS, the premises located at 3526 Ridge Road, Lansing, Illinois, formerly known as "Pipes and Pizza" were recently purchased, and the purchaser has requested that the liquor license originally authorized for said premises be issued to said purchaser, with certain modifications relating to the days and hours of operation permitted by said license; and

WHEREAS, the Village has also received a request to transfer an existing license by elimination of a class 4 alcohol and beer license, permitting a full bar in a bowling alley and substituting in its place and stead a class 9 license which permits the retail sale of beer and wine only for on premises consumption in a restaurant; and

WHEREAS, the existing Ordinance at Section 5-67 specifics that the licensing year shall commence on July 1st and expire on June 30th; and the practice and preference of the Villages to have the licensing year to commence on January 1st and expire on December 31st; and

WHEREAS, the adoption of this Ordinance amending said provisions will benefit the health, safety, morals and welfares of the public in general,

NOW THEREFORE BE IT ORDAINED by the Village President and Board of Trustees of the Village of Lansing, Cook County, Illinois, pursuant to its home rule powers, as follows:

Section 1.  Section 5-53 entitled "Classes" is hereby amended by adding the following class:

Class 11.  Beer and Wine - Ridge Road TIF District Historic Theater Building License.

Class 11a. Permitting the retail sale of beer and wine for on premise consumption in an establishment located within the boundaries of the area commonly referred to as the Ridge Road TIF area, under the following conditions:

1. Where more tan 50% of the gross sales is attributed to the sale of food.
2. Where beer and wine is only served at tables or booths.
3. Where there is no bar for the serving of food or beer and wine.
4. Where the hours are from 12:00 noon to 11:00 p.m. on Sunday through Thursday, and 11:00 a.m. through 12:00 a.m. on Friday and Saturday.

Section 2. Section 5-54 entitled "Number of Licenses" is hereby amended to read as follows:

(a) The number of license that the local liquor control commissioner shall issue for each class of liquor license shall be as follows:

1. Class 1 licenses shall be limited to seven (7);
2. Class 2 licenses shall be limited to five (5);
3. Class 3 licenses shall be limited to four (4);
4. Class 4 licenses shall be limited to one (1);
5. Class 5 licenses shall not be limited, except as provided in this chapter;
6. Class 6 licenses:
   6a. Licenses shall be limited to 1;
   6b. Licenses shall be limited to 1;
   6c. Licenses shall be limited to 1;
7. Class 7 licenses shall be limited to three (3);
8. Class 8 licenses; Reserved;
9. Class 9 licenses shall be limited to two (2);
10. Class 10 licenses shall be limited to one (1).
11. Class 11 licenses shall be limited to one ().

Section 3. Section 5-56 entitled "Fee Required, Regular Hours" is hereby amended by adding the following additional class:

Class 11. Ridge Road TIF District Historic Theater Building (Beer and Wine only). One Thousand ($1,000.00) Dollars.

Section 4. Section 5-67 entitled "Duration" is hereby amended to read as follows:

For the purpose of this Chapter, the licensing year shall commence on January first (1st) and expire on December thirty-first (31st). All licenses shall terminate on the thirty first (31st) day of December next following issuance unless sooner revoked or suspended.

Section 5-69, Same - applications is hereby amended to read as follows:

An Application for renewal of a license under this Chapter shall not be construed as such unless made prior to the expiration of the license year, i.e., December 31st and unless submitted with the appropriate licensing fee.

Section 5.  That all Ordinances or parts of Ordinances in conflict herewith are hereby repealed.


Section 6.  That this Ordinance shall be in full force and effect from and after its passage approval and publication as provided by law.


PASSED this _____ day of _____, 1995.


AYES:

NAYS:

ABSENT:


APPROVED this _____ day of _____, 1995


_____

VILLAGE PRESIDENT


ATTEST:


_____

VILLAGE CLERK

<u>VERIFICATION BY CERTIFICATION PURSUANT TO 28 U.S.C. §1746</u>

Pursuant to 28 U.S.C. §1746, the undersigned declares, certifies, and verifies under penalties of perjury under the laws of the United States of America that the following facts are true and correct:

(1) The undersigned counsel personally sent, on May 27, 2008, before the hour of 5:00 p.m., an electronic facsimile transmission to both the Mayor of Lansing and the Village Attorney for Lansing, which included Plaintiffs' Verified Complaint and Motion for TRO/Injunctive Relief with a letter promising to provide each recipient with the precise time and date for the hearing on said motion, when the undersigned received this information from the Court.

(2) The facsimile numbers are known, working numbers for each recipient; and

(3) Any additional notice for purposes of entering a TRO should be excused given the irreparable harm analysis as outlined in Plaintiffs' Motion for Injunctive Relief.

5/27/08
Date

Anthony J. Masciopinto

**EXHIBIT 6**