IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN JESSO, MICHAEL JESSO, CAFÉ BORGIA, INC., and CAFÉ BORGIA REAL ESTATE, LLC, | ) ) ) ) | |
| Plaintiffs, | ) | No. 08 C 3047 |
| v. | ) ) | Judge Robert W. Gettleman |
| DANIEL R. PODGORSKI, Liquor Commissioner, in his official capacity; VILLAGE OF LANSING BOARD OF TRUSTEES, in its official capacity; and VILLAGE OF LANSING, a municipal corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Karen Jesso, Michael Jesso, Café Borgia, Inc. and Café Borgia Real Estate, LLC have brought a four count complaint against defendants Daniel R. Podgorski in his official capacity as Liquor Commissioner of the Village of Lansing; the Village of Lansing Board of Trustees; and the Village of Lansing (the "Village") stemming from defendants' alleged failure to act upon plaintiffs' application for a renewal of a liquor license. Count I alleges a procedural due process violation and Count II alleges a Fifth Amendment due process violation. Counts III and IV allege violations of the Fourteenth Amendment Equal Protection Clause. Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons discussed below, the motion is denied.[1]

---

[1] Plaintiffs have agreed to dismiss the Board of Trustees.

**FACTS**

Plaintiffs Karen and Michael Jesso own plaintiff Café Borgia, Inc., which operated as an Italian restaurant in the Village, and Café Borgia Real Estate, LLC, which owns the building in which the restaurant operated. Defendant Podgorski is the mayor of the Village, president of the Village Board of Trustees, and the Village Liquor Commissioner.

Plaintiffs purchased the building in 1978 and began operating Café Borgia in the mid 1980s. Throughout the mid 1980s through 1994 plaintiffs sought a local liquor license but were repeatedly told no new applications were being issued and the were no new licenses to be had. In January 1994 the Village announced that it was issuing a new local liquor license to facilitate the sale of a building between two private individuals, allowing a previously closed restaurant called Pipes & Pizza, to be purchased by new owners and reopened with the ability to sell alcohol.

Sometime in the early 1990s plaintiffs received an application for a local liquor license which they completed and submitted and which was subsequently denied. In response to that denial plaintiffs sued the Village. In the summer of 1995 plaintiffs and the Village settled their dispute, with the Village approving and authorizing plaintiffs' purchase of a local liquor license from an individual who had previously operated a local bowling alley.

Form 1995 through December 2005 plaintiffs submitted yearly applications to renew the license. Each application was routinely approved. In 2005 plaintiffs spent hundreds of thousands of dollars to remodel the building that housed the restaurant. In late 2005 or early 2006 defendants authorized an expansion of plaintiffs' liquor license to include hard alcohol in addition to beer and wine.

In late 2006 plaintiffs decided to open another restaurant, located in Indiana. Around the same time plaintiffs listed the building for sale, although they had not yet made a decision to close the Lansing location. By late December 2006, plaintiffs had not yet received a renewal application for their 2007 liquor license. Plaintiff Karen Jesso called Podgorski to inquire why, and was told that plaintiffs would not be receiving a renewal application for 2007 because plaintiffs were opening another restaurant in a new city and had made Podgorski "look like a fool." After numerous complaints to the Village's Chamber of Commerce, plaintiffs finally received a renewal application for 2007, which was ultimately approved.

Plaintiffs opened their second restaurant, located in Munster, Indiana, in August 2007. At that time they were forced to temporarily shut down the Lansing location because of a skilled labor shortage preventing plaintiffs from operating both locations.[2] By December 27, 2007, plaintiffs had not yet received a renewal application for their 2008 license. Plaintiffs' attorney went to Podgorski's office to inquire and was informed by Village representative that Podgorski had left explicit instructions that plaintiffs were not ro receive their renewal application until they met with him. Podgorski was out of town, however, until after the first of the year. By then plaintiffs' 2007 license would have expired and any renewal application would be void. Plaintiffs' lawyer sent a letter to the Village attorney complaining about Podgorski's directions.

---

[2]It is unclear from the complaint whether the restaurant has ever been reopened and defendants justify their alleged refusal to act on plaintiffs' renewal application on the basis that "there was no business operating out of the premises in question." Drawing all inferences in favor of plaintiffs, the usage of "temporary" in the complaint implies that either the business did reopen, or that it was prevented from reopening because of defendants' refusal to consider the 2008 licence renewal application. In any event, resolution of this issue would be inappropriate in the context of a Rule 2(b)(6) motion, but could be addressed in a motion for summary judgment or at trail.

The attorney then received a renewal application which plaintiffs submitted the following day, December 28, 2007.

Because plaintiffs had not received their license by January 16, 2008, plaintiffs' attorney wrote Podgorski requesting that either the license issue or be denied, or an explanation of the delay be given. As of the date of the instant complaint, plaintiffs had received no response.

## DISCUSSION

In Counts I and II, plaintiffs allege that they were denied procedural due process when defendants failed to act on plaintiffs' local liquor license application. Defendants have moved to dismiss the counts arguing that plaintiffs have failed to exhaust all administrative remedies. See Gates v. Holy Cross Hospital, 175 Ill.App.3d 434, 448 (1st Dist. 1998). Defendants argue that plaintiffs should have appealed to the State Liquor Control Commission under 235 ILCS 5/7-9, which provides for appeals of actions constituting the refusal or denial of a license. As plaintiffs point out, however, Podgorski has essentially single handedly "tabled" their renewal application, neither granting it nor denying it. Under both the Lansing ordinance and the Illinois statute any appeal to the Illinois Liquor Control Commission is limited to the review of the official record of the proceedings before the local liquor control commission. Id. Because there have been no proceedings, there is nothing to appeal.

Nor is mandamus an available remedy. As defendants themselves acknowledge, mandamus is appropriate only when a plaintiff has a clear right to the relief requested, the defendant has a clear duty to act, and clear authority exists in the defendant to comply with an order granting mandamus relief. Baldacchino v. Thompson, 289 Ill.App.3d 104, 109 (1st Dist. 1997). Mandamus cannot be

4

used, however, to direct a public body to reach a particular decision or to exercise its discretion in a particular manner. Jamison v. City of Zion, 359 Ill.App.3d 268, 271 (2d Dist. 2005).

The Lansing liquor code places no time limitation on defendant Podgorski's review of a renewal application. There is no set period in which a decision must be made. Thus, as plaintiffs argue, Podgorski is given unfettered discretion to "de facto" deny a licensee's renewal application by simply ignoring it. As a result, plaintiff does not necessarily have a clear right to a timely response, and Podgorski has no clear legal duty to issue a timely response. Accordingly, mandamus is unavailable. See DeVito v. Chicago Park District, 972 F.3d 851 (7th Cir. 1992) (when no time frame is provided, the court may not order a hearing at a particular time). Therefore, defendants' motion to dismiss Counts I and II is denied.

In Counts III and IV plaintiffs assert a "class of one" equal protection claim against defendants alleging that defendants have, in the past, issued renewal licenses to "closed" businesses, or allowed the sale of a liquor license from a closed business, but have refused to do so for plaintiffs because plaintiffs made Podgorski "look bad." Defendants have moved to dismiss, arguing that the Illinois Liquor Control Act requires the existence of an established place of business as a prerequisite to the issuance of a liquor license. Goode v. Thomas, 31 Ill.App.3d 674, 677 (3d Dist. 1975). Because the complaint indicates that Café Borgia was closed at the time of the renewal application, defendants argue that there was a "rational basis" for withholding the license.

Plaintiff has alleged, however, that defendant Podgorski is treating similarly situated individuals differently because of "illegitimate animus" against plaintiffs. See Aida Food & Liquor, Inc. v. City of Chicago, 439 F.3d 397, 402-03 (7th Cir. 2006). Moreover, even if, as defendants argue, there is a rational basis for rejecting plaintiffs' application, there is no rational basis for failing

5

to do so. Defendants have never denied the application, but instead have simply ignored it. By so doing, they have blocked any possible avenue for plaintiffs to "appeal" the decision. The complaint alleges all that is necessary to state a claim that plaintiffs have been treated differently simply because of an illegitimate animus, with no rational basis. Therefore, the motion to dismiss Counts III and IV is denied.

## **CONCLUSION**

For the reasons set forth above defendants' motion to dismiss is denied. The Board of Trustees are dismissed by agreement. Defendants are ordered to answer the complaint on or before March 13, 2009. This matter is set for a report on status on March 17, 2009, at 9:00 a.m.


**ENTER:** **February 17, 2009**

_____
**Robert W. Gettleman**
**United States District Judge**